**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RODERICK O. ELLIOTT,<br>　　　　　Appellant, | DOCKET NUMBER<br>SF-114M-23-0364-Y-2 |
| 　　　v. | |
| DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DATE:  April 1, 2026 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Wilbert D. Sonnier</u> and <u>Edward Blum</u>, Los Angeles, California,
　　for the appellant.

<u>Eileen Dizon Calaguas</u>, San Francisco, California, for the agency.

<u>George D. Johnson</u>, Springfield, Virginia, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which
sustained his indefinite suspension from the Federal service.  Generally, we grant
petitions such as this one only in the following circumstances:  the initial decision
contains erroneous findings of material fact; the initial decision is based on an

---

[1]  A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant is a Supervisory Transportation Security Officer for the agency's Transportation Security Administration (TSA). *Elliott v. Department of Homeland Security*, MSPB Docket No. SF-114M-23-0364-Y-1, Initial Appeal File (IAF), Tab 1 at 7; *Elliott v. Department of Homeland Security*, MSPB Docket No. SF-114M-23-0364-Y-2, Appeal File (Y-2 AF), Tab 6, Initial Decision (ID) at 2. On February 28, 2023, he was arrested and charged with violent felonies. IAF, Tab 5 at 31.

On March 23, 2023, several additional things happened that are particularly relevant to the instant appeal. First, the agency's Personnel Security Chief issued a notice to the appellant, suspending his national security eligibility, i.e., his access to classified information and eligibility to hold a sensitive position.[2] ID at 2; IAF, Tab 5 at 31-32. The notice cited the appellant's arrest for felony criminal charges as the basis for the action. ID at 2; IAF, Tab 5 at 31-32.

---

[2] Although the appellant has disagreed, the agency indicated that the appellant's position is a Critical Sensitive position requiring a Secret level security clearance. ID at 2; IAF, Tab 5 at 47.

Second, the Personnel Security Chief notified the Federal Security Director of the suspended national security eligibility in a letter that did not include any information about the appellant's arrest and criminal charges. ID at 3-4; IAF, Tab 5 at 30. Third, the Deputy Assistant Federal Security Director proposed the appellant's indefinite suspension, citing the suspension of the appellant's national security eligibility. ID at 4; IAF, Tab 5 at 26-29. The proposal to indefinitely suspend the appellant from service did not describe the reason behind the appellant's suspended national security eligibility but did note that the aforementioned letter from the Personnel Security Chief to the appellant included the reason. The proposal to indefinitely suspend the appellant from service also listed one of the aforementioned notices from the Personnel Security Chief as among the materials relied upon. ID at 4-5; IAF, Tab 5 at 26. Fourth, the Federal Security Director placed the appellant on administrative leave, citing only the proposed indefinite suspension as the underlying reason for the status change. ID at 3; IAF, Tab 5 at 33.

Despite having the opportunity to do so, the appellant did not respond to his proposed indefinite suspension. ID at 5. On April 7, 2023, the deciding official sustained the action. *Id.*; IAF, Tab 5 at 20-25.

The appellant filed the instant appeal to challenge his indefinite suspension. IAF, Tab 1. He presented affirmative defenses of a due process violation and harmful procedural error. ID at 6. The administrative judge developed the record and held the requested hearing before sustaining the agency's action.

The administrative judge first explained the agency's burden in a case such as this, involving an indefinite suspension from service based on a suspension of national security eligibility and access to classified information. ID at 7-10. The administrative judge next explained the burdens regarding any alleged due process violation or harmful procedural error. ID at 10-11.

Turning to his fact findings, the administrative judge concluded that the appellant's position required national security eligibility and access to classified information, and the appellant's arguments to the contrary were not persuasive. ID at 11-12. He also found no merit to the appellant's due process claim. ID at 12-15. The administrative judge similarly found no merit to the harmful procedural error claim. ID at 15-17. Lastly, he concluded that the agency proved the requisite nexus and the reasonableness of its penalty. ID at 17-19.

The appellant has filed a petition for review. *Elliott v. Department of Homeland Security*, MSPB Docket No. SF-114M-23-0364-Y-2, Petition for Review (PFR) File, Tab 3. The agency has filed a response, and the appellant has replied. PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

In his petition, the appellant presents several arguments that we will address in turn. PFR File, Tab 3 at 5-6. He argues that (1) the agency denied him due process by denying him a meaningful opportunity to be heard and invoke the discretion of the deciding official, *id.* at 6-15; (2) the agency denied him due process because the deciding official engaged in ex parte communications with the Federal Security Director, *id.* at 15-20; (3) the agency denied him due process because the deciding official considered evidence not provided to the appellant, *id.* at 20-26; (4) the administrative judge erroneously applied 5 U.S.C. § 7313, *id.* at 26-27; (5) the administrative judge violated his right to a fair and impartial hearing, *id.* at 27-32; and (6) the agency did not prove that his position required national security eligibility or access to classified information, *id.* at 33.

The appellant has not shown that he was denied a meaningful opportunity to be heard and invoke the discretion of the deciding official.

Due process requires, at a minimum, that an employee being deprived of his property interest in continued employment be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *See Mathews v.*

*Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, (1965)).  As the U.S. Supreme Court explained in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-46 (1985), the opportunity to respond to a proposed adverse action is important for two reasons.  First, an adverse action will often involve factual disputes and consideration of the employee's response may clarify such disputes.  *Id.* at 543; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999).  Second, "[e]ven where the facts are clear, the appropriateness or necessity of the [penalty] may not be," and in such cases the employee must receive a "meaningful opportunity to invoke the discretion of the decision maker."  *Loudermill*, 470 U.S. at 543; *see Stone*, 179 F.3d at 1376.  Thus, "the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate."  *Stone*, 179 F.3d at 1376; *see Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶¶ 2, 22 (2014) (finding that the considerations described in *Loudermill* were present in determining whether an agency provided due process to an employee who was indefinitely suspended based on the suspension of his security clearance).

To recall, the agency offered the appellant an opportunity to respond to his proposed indefinite suspension, but he chose not to do so.  In any event, he now argues that he lacked a meaningful opportunity to be heard because the deciding official indicated that he had no choice but to impose the indefinite suspension.  PFR File, Tab 3 at 12-15.  We are not persuaded.

During the hearing, the deciding official provided some inconsistent testimony on this point.  On the one hand, he indicated that agency policy required that an employee be placed on indefinite suspension if their national security eligibility is suspended.[3]  Y-2 AF, Tab 7 at 21-22.  On the other hand, he

---

[3] The appellant has, himself, acknowledged agency policy affords discretion on the matter.  PFR File, Tab 3 at 12; IAF, Tab 5 at 78.  That policy, including the language indicating that there is discretion regarding whether to impose an indefinite suspension, is also explicitly recognized in the proposal to indefinitely suspend the appellant.  IAF,

alluded to the indefinite suspension being a choice he made as the deciding official, rather than something required of him. He noted that it would be "completely irresponsible of [him] to continue to pay" the appellant by leaving him in an administrative leave status. *Id.* at 20. When asked, the deciding official also stated that he made the decision to sustain the indefinite suspension and was not told how to rule on the matter. *Id.* at 22. The deciding official later stated again that agency policy required an indefinite suspension under the circumstances. *Id.* at 60. But he simultaneously testified that he believed he had the authority to not impose the indefinite suspension. *Id.* at 59-60. The deciding official further explained that he considered leaving the appellant on administrative leave pending completion of his national security eligibility suspension but chose not to do so under the circumstances. *Id.* at 61-62. The decision letter, itself, similarly states that the deciding official considered leaving the appellant in an administrative leave status but chose not to, reasoning that doing so would not promote the efficiency of the service. IAF, Tab 5 at 21.

We acknowledge that the deciding official's testimony was not a model of clarity. However, considering that testimony in full, along with the proposal and decision letters, we do not find that the appellant lacked a meaningful opportunity to invoke the discretion of the deciding official.

<u>The appellant has not shown that the deciding official violated his right to due process by engaging in ex parte communication with another official.</u>

The appellant's next arguments also implicate his right to due process. He argues that the agency violated his rights because the deciding official engaged in ex parte communications with the Federal Security Director. PFR File, Tab 3 at 15-20. We find that he has not proven this claim.

Pursuant to the U.S. Court of Appeals for the Federal Circuit's decisions in *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone*, 179 F.3d at 1376-77, a deciding official violates an employee's due process rights

---

Tab 5 at 27.

when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 6 (2015). The Board has held that an employee's due process right to notice extends to both ex parte information provided to a deciding official and information known personally to the deciding official, if the information was considered in reaching the decision and not previously disclosed to the appellant. *Id. Ward*, *Stone*, and their progeny recognize, however, that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm. *Id.*

In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material: (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. Ultimately, we must determine whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. *Id.*

The appellant repeatedly points us to language from the letter sustaining his indefinite suspension which states, "the basis for the suspension of your national security eligibility were detailed in a letter to you from PerSec dated March the 23, 2023. The PerSec letter was sent to your TSA and/or personal email." *E.g.*, PFR File, Tab 3 at 15-17 (referencing, *e.g.*, IAF, Tab 5 at 20). The appellant argues that the deciding official "conceded," during his hearing testimony, that he used the aforementioned language in the decision letter because he had engaged in ex parte communication with the Personnel Security Chief about the underlying suspension of national security eligibility. But that quoted language is

provided, verbatim, in the proposal to indefinitely suspend the appellant. IAF, Tab 5 at 26. So, while the appellant has suggested that the decision letter language and associated testimony reflects something nefarious or improper, in terms of communication between the deciding official and the Personnel Security Chief, we find nothing of the sort.

The appellant's broader point seems to be that the deciding official's testimony could be construed as indicating that he considered the March 23, 2023 notice from the Personnel Security Chief to the appellant, which did discuss the appellant's alleged crimes but was not attached to the proposed indefinite suspension, rather than the similarly dated notice from the Personnel Security Chief to the Federal Security Director, which did not discuss the appellant's alleged crimes but was attached to the proposed indefinite suspension. *Id.* at 30-32. However, as the administrative judge explained, questions to and answers from the deciding official during the hearing were at best confusing as to which of the March 23, 2023 notices the deciding official considered. The deciding official seemed to provide conflicting testimony on the point, which the administrative judge described as possibly stemming from the appellant's counsel's unclear questions and the deciding official not understanding which of the various March 23, 2023 notices he was being asked about. ID at 12-13; *see, e.g.*, IAF, Tab 5 at 30-32; Y-2 AF, Tab 7 at 18-19, 26-28, 43-47. In any event, the administrative judge found both notices were either attached to or referenced in the proposed indefinite suspension and that the appellant had each in his possession. ID at 12-13. He further found that the deciding official credibly testified that he based his decision solely on the appellant's loss of national security eligibility. ID at 13.

Under these circumstances, we do not find that the appellant has proven that the deciding official engaged in ex parte communication with the Federal Security Director, much less the kind of ex parte communication that rises to the level of a due process violation.

<u>The appellant has not shown that the deciding official violated his right to due process by considering evidence beyond that which was provided to the appellant.</u>

The appellant's next arguments, about impermissible consideration of evidence not provided to the appellant, concerns the agency's table of penalties, PFR File, Tab 3 at 21-24, a typographical error the deciding official described during his hearing testimony regarding whether the appellant's position was "Critical Sensitive," *id.* at 24-26, and the March 23, 2023 notice informing the appellant that his national security eligibility had been suspended, *id.* at 26. Once again, we are not persuaded.

Regarding the table of penalties, the deciding official issued a brief letter to the "LAX Human Resources Department," which stated that he had decided to uphold the appellant's proposed indefinite suspension. IAF, Tab 13 at 37. The letter states as follows: "Based on the relevant facts presented, I find that there were no mitigating circumstances to consider for a lesser penalty. This decision falls within the TSA Table of Offenses and Penalties." *Id.* The deciding official testified, however, that the letter's reference to the table of penalties was inadvertent and should not have been included in the letter because it was not something that he considered. Y-2 AF, Tab 7 at 53-54.

On review, the appellant argues that the deciding official's testimony on this point was not credible and that the consideration of a table of penalties without notifying the appellant of the same amounts to a due process violation. PFR File, Tab 3 at 21-24. While the administrative judge did not explicitly rule on the credibility of that portion of the deciding official's testimony, he did describe the deciding official as a credible witness in other regards. ID at 12-13, 16. After carefully reviewing the record after, we discern no reason to find the deciding official's testimony about the table of penalties not credible.

The letter at issue appears to be little more than the deciding official informing Human Resources that he considered the proposed indefinite suspension, that the appellant did not respond to the proposal, and that he had

decided to sustain the action in part due to the absence of mitigating circumstances to support a lesser penalty. IAF, Tab 13 at 37. It is both plausible and probable, given the deciding official's testimony, that the reference to the table of penalties was inadvertent. Moreover, even if he had considered the table of penalties, we have no reason to believe that the deciding official considered the table as an aggravating factor. *See Bryant v. Department of Veterans Affairs*, 2024 MSPB 16, ¶¶ 12, 18-22 (recognizing that if an employee has not been given notice of an aggravating factor supporting an enhanced penalty, a constitutional due process violation may have occurred, and finding that to have occurred where the agency relied on a table of penalties as an aggravating factor).

The appellant's next allegation is similarly unavailing. The proposed indefinite suspension charged the appellant with having his national security eligibility suspended. IAF, Tab 5 at 26. To elaborate, the proposal stated that the appellant's position required that he obtain and maintain eligibility to access classified information and hold a sensitive position. *Id.* The proposal further referred to an attached Job Analysis Tool (JAT) as indicating that it designates the appellant's position as sensitive and requiring a security clearance. *Id.* Finally, and most importantly to the appellant's argument, it alluded to that JAT as checking boxes for "Non-Critical Sensitive" and "Security Clearance Required." *Id.*

In fact, on the attached JAT boxes were checked for "Critical Sensitive," not "Non-Critical Sensitive." *Id.* at 47. As the appellant acknowledges, the deciding official testified that the proposal's reference to "Non-Critical Sensitive" was a typographical error, and he considered the position to be Critical Sensitive. PFR File, Tab 3 at 25; Y-2 AF, Tab 7 at 42. However, the appellant asserts that the deciding official's failure to inform the appellant of his belief that this was a typographical error amounted to new information for which he was entitled notice and an opportunity to respond before the deciding official issued his decision. PFR File, Tab 3 at 24-26. We disagree.

The proposal to indefinitely suspend the appellant from service unambiguously described the action as based upon the suspension of the appellant's national security eligibility, which was required of his position. At worst, the proposal and the attached materials contained inconsistent information as to whether his position, which required national security eligibility, was a "Non-Critical Sensitive" position or a "Critical Sensitive" position. Thus, the appellant had the opportunity to present a response about that issue before the deciding official issued his decision and simply chose not to do so. He was not denied the opportunity to provide a response about the nature of his position.

The appellant's final due process argument is related to one discussed above. PFR File, Tab 3 at 26. He argues that the proposal to indefinitely suspend him from the Federal service referenced the March 23, 2023 notice from the Personnel Security Chief to the appellant, suspending his national security eligibility, but the proposal did not include that letter as one of the materials that the deciding official would rely upon even though he did rely on that letter. *Id.*; *see* IAF, Tab 5 at 26 (proposal to indefinitely suspend the appellant from service) 31-32 (letter suspending his national security eligibility). Again, the administrative judge found that there seemed to be confusion by the deciding official during the hearing as it pertained to the March 23, 2023 notice from the Personnel Security Chief to the appellant and the similarly dated notice from the Personnel Security Chief to the Federal Security Director, largely due to the confusing questions from the appellant's counsel. ID at 12-13. In any event, the administrative judge concluded that, even if the deciding official considered the one to the appellant, which was not attached to the proposal, it was referenced in the proposal and it was in the appellant's possession. *Id.* The appellant has not shown otherwise, and he has not proven any associated violation of his right to due process.

The appellant's remaining arguments are unavailing.

The appellant's other arguments presented on review are also not persuasive. This includes arguments that the administrative judge erroneously applied 5 U.S.C. § 7313, PFR File, Tab 3 at 26-27, that the administrative judge violated his right to a fair and impartial hearing, *id.* at 27-32, and that the agency did not prove that his position required national security eligibility or access to classified information, *id.* at 33.

Regarding the first of those arguments, the administrative judge recognized in both a prehearing conference summary and the initial decision that the Board has jurisdiction over this appeal pursuant to a memorandum of agreement with the TSA. IAF, Tab 17 at 4; ID at 1; *see Buelna*, 121 M.S.P.R. 262, ¶ 13 (considering an indefinite suspension based on the loss of access to classified information and recognizing that the matter was governed by the TSA's personnel management system). He also explained the Board's standards for adjudicating indefinite suspensions, including those related to an individual's access to classified information. IAF, Tab 17 at 5-6; ID at 7-9. However, in doing so, the prehearing conference summary referenced the procedural protections of 5 U.S.C. § 7313, while the initial decision referenced the procedural protections of 5 U.S.C. § 7513. IAF, Tab 17 at 5; ID at 7, 9, 18. Section 7313 is a provision titled "Riots and civil disorders." 5 U.S.C. § 7313. It is apparent that the administrative judge referenced that provision by accident when he intended to refer to section 7513. Though not mentioned in the appellant's petition for review, the administrative judge acknowledged as much and corrected this typographical error in a subsequent order. IAF, Tab 22 at 1.

On review, the appellant points out the mistaken reference to section 7313, and he also argues that this appeal is governed by the agency's policies, rather than statute. PFR File, Tab 3 at 26-27. He has not, however, argued that the agency's policies or the mistaken reference to section 7313 dictate a different conclusion than that which was reached by the administrative judge. In the

absence of such an argument, we discern no basis for reaching a different conclusion ourselves.

Regarding the next argument, pertaining to a fair and impartial hearing, the appellant asserts that the administrative judge erred by limiting his ability to establish a harmful procedural error in two ways: denying the appellant's request to call the proposing official as a witness, *id.* at 27-30, and limiting the appellant's cross-examination of the deciding official, *id.* at 31-32.

The appellant requested the proposing official as a witness, generically alluding to his testimony being relevant for purposes of establishing that the agency did not follow established procedures. IAF, Tab 16 at 9-10. The administrative judge denied the request, indicating that the proposal spoke for itself and there was no substantive dispute about its contents or attachments. IAF, Tab 17 at 3. Having been given the opportunity to renew his request, the appellant did so, IAF, Tab 21 at 4-7, but the administrative judge once again denied the proposing official as a witness for the same reasons, IAF, Tab 22 at 1-2. Notably, we found no instance of the appellant explaining what procedural protections the proposing official might testify about, why the appellant might suspect that the agency did not provide those procedural protections, or why any such error might have been harmful. *See generally Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991) (holding that an agency's procedural error is harmful only where the record shows that it was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error). On review, the appellant suggests that the proposing official's testimony may have been relevant for purposes of determining whether he considered alternative sanctions. PFR File, Tab 3 at 29. However, this explanation is not timely, and it does not persuade us that the administrative judge abused his wide discretion. *See Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985) (recognizing that

an administrative judge has wide discretion to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious).

The appellant's argument about the administrative judge limiting his cross-examination of the deciding official is unavailing for similar reasons. Although the appellant has directed us to a few instances of the administrative judge ruling in the agency's favor regarding objections to certain questions, he has not established that this amounted to an abuse of the administrative judge's wide discretion on such matters. *Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 21 (2015) (recognizing that the administrative judge's wide discretion includes the authority to exclude testimony that would be irrelevant, immaterial, or unduly repetitious).

Regarding the last of the appellant's arguments, that the agency did not prove that his position required national security eligibility or access to classified information, PFR File, Tab 3 at 33, we are similarly unmoved. The administrative judge considered the matter below and found that the agency met its burden—it proved that the appellant's position required national security eligibility and access to classified information. ID at 11-12. He reached this conclusion based upon documentation about the appellant's position and hearing testimony, which the administrative judge found credible. *Id.*; *see, e.g.*, IAF, Tab 5 at 47. To the extent that the appellant presented contrary testimony, the administrative judge found that testimony inherently improbable, inconsistent with the relevant documentation, and not credible. ID at 12. On review, the appellant renews this argument, summarily, without further explanation. Doing so does not, however, warrant our disturbing the well-reasoned findings of the administrative judge. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

In sum, the matter before us is not especially complicated. The appellant's position required that he maintain national security eligibility, but that eligibility was suspended. The agency proposed and then imposed an indefinite suspension from service based upon the same. While the appellant has identified a few instances of ambiguity, confusion, and typographical errors, he has not persuaded us that the administrative judge erred in finding that the agency met its burden of proof regarding the indefinite suspension, nor has he met his own burden of proving any affirmative defense.

## NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

<u>receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[5]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                      _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.